[No. 18029.    In Bank.—March 27, 1894.]

## C. H. HUFFMAN, RESPONDENT, *v.* A. C. HALL, APPELLANT.

ROADS AND HIGHWAYS—PUBLIC USER—DEDICATION—EVIDENCE—OFFER OF PROOF.—Where a road has not been laid out as such by the public, it cannot be held to be a public highway by virtue of section 2618 of the code, unless it is shown to have been dedicated or abandoned to the public by the owner of the land; and an offer to prove its use by the public for the period of five years, accompanied by a statement of the party offering the evidence that he did not expect to prove any intention on the part of the owner of the land to dedicate the land as a public highway, except by proving its use by the public, is properly excluded.

ID.—INTENTION TO DEDICATE ESSENTIAL—EFFECT OF USER.—Dedication exists only where the owner of the land has manifested some intention to make the dedication; and where the dedication of a highway is sought to be established by user, it must appear that such user was with the knowledge of the owner, and with his consent, or without objection on his part.

ID.—LICENSE TO USE WAY—INCLOSURE BY FENCE—REBUTTAL OF DEDICATION.—The fact that the land had been inclosed by a fence would show that any use of it by the public for a way was only permissive, and is strong evidence in support of a mere license to the public to pass over the designated way, and in rebuttal of a dedication to public use.

ID.—USER FOR FIVE YEARS—AMENDMENT OF CODE—REPEAL OF ORIGINAL SECTION—CASE OVERRULED.— The provision of section 2619 of the Political Code, as it originally stood, June 1, 1873, providing that "all roads used as such for a period of five years are highways," was superseded and repealed by the amendment of March 30, 1874, although the amendatory act was made applicable to certain counties only, and the original section could not, after the date of that amendment, be invoked as an authority for the creation of a highway by mere user in any county of the state. (*Gloster* v. *Wade*, 78 Cal. 407, overruled.)

ID.—CONSTITUTIONAL LAW—REPUBLICATION OF AMENDMENT—REPEAL—SAVING CLAUSE—LIMITATION OF AMENDATORY ACT.—Under section 24 of article IV of the state constitution, which provides that an "act revised or section amended shall be re-enacted and published at length as revised or amended," when a section of the code is "amended to read

as follows," and the amended section is published at length, without any saving clause continuing the original section in force for any purpose or to any extent, the effect of the amendment is to repeal the section as it originally stood, and it ceases to have any statutory force; and a section of the amendatory act merely providing that the amendment shall be applicable to certain counties named does not operate as a saving clause to continue the original section in force in other counties of the state.

APPEAL from a judgment of the Superior Court of Merced County.

The facts are stated in the opinion of the court.

*James F. Peck, Breckinridge & Peck,* and *B. F. Fowler,* for Appellant.

The user of the road by the public for a period of five years confers the right of a public highway. (Pol. Code, sec. 2619; *Bolger* v. *Foss,* 65 Cal. 250; *Gloster* v. *Wade,* 78 Cal. 407; *McRose* v. *Bottyer,* 81 Cal. 122.)    Section 2619 of the Political Code is constitutional. (*Bolger* v. *Foss,* 65 Cal. 250; *Hope* v. *Barnett,* 78 Cal. 9; *Gloster* v. *Wade,* 78 Cal. 410; *McRose* v. *Bottyer,* 81 Cal. 122.)

*F. H. Gould, W. A. Nygh, T. C. Law,* and *Baldwin & Campbell,* for Respondent.

Section 2619 of the Political Code, as existing on January 1, 1880, under which defendant claimed a road had been established by user, is unconstitutional, in so far as a title by user alone is sought to be established, as private property cannot be taken for public use without due process of law. (*People* v. *Kimball,* 4 Mich. 95; *Truax* v. *Sterling,* 74 Mich. 165; *Cohen* v. *Wright,* 22 Cal. 318.)    Mere user is not sufficient to constitute the way a public one, but there must have been an uninterrupted use of the way claimed as a public highway, under a claim of right, peaceable, notorious, and exclusive. (*Shellhouse* v. *State,* 110 Ind. 509; *State* v. *Green,* 41 Iowa, 693; *Chestnut Hill etc. T. P. Co.* v. *Piper,* 77 Pa. St. 432; *Pentland* v. *Keep,* 41 Wis. 490; *Johnson* v. *Lewis,* 47 Ark. 66; *Jones* v. *Davis,* 35 Wis. 376; *Green* v. *Bethea,* 30 Ga. 896; *Talbott* v. *Grace,* 30 Ind. 332; 95 Am. Dec.

704; 9 Am. & Eng. Ency. of Law, 367, 368.)   It cannot be claimed that a public road will exist, unless there is some act on the part of the authorities operating as a notice that a highway is recognized and claimed by the public, in order to give the owner an opportunity, if he chooses so to do, to protest against its use as such and protect his interests.   (*State* v. *Horn*, 12 Pac. Rep. 148; 35 Kan. 717; *San Francisco* v. *Calderwood*, 31 Cal. 585; 91 Am. Dec. 542; *State of Wisconsin* v. *Joyce*, 19 Wis. 90, and cases cited; *Board of Supervisors* v. *People*, 116 Ill. 474; *Barker* v. *Clark*, 4 N. H. 380; 17 Am. Dec. 428; *Reed* v. *Northfield*, 13 Pick. 94; 23 Am. Dec. 662; *Thayer* v. *Boston*, 19 Pick. 511; 31 Am. Dec. 157; *Stewart* v. *Frink*, 94 N. C. 487; 55 Am. Rep. 619.)

Harrison J.—The plaintiff is the owner of a tract of land in Merced county, lying to the east of the Snelling road, and bounding upon Bear creek at the south. The defendant was the road overseer of road district No. 1 of Merced county, and on the 17th of January, 1889, destroyed and removed about 60 feet of a fence which extended from Bear creek northerly between the Snelling road and the plaintiff's land, under the claim that it was an obstruction to a public road along the northerly bank of Bear creek.   The plaintiff brought this action for damages for the alleged trespass, and to enjoin the defendant from further interfering with the fence.   Judgment was rendered in his favor, and the defendant has appealed.

The title of the plaintiff to the land was not questioned at the trial, and the finding of the court that the land had been, for a period of more than ten years prior to January, 1889, inclosed along the Snelling road with a good and substantial fence is not excepted to.   The defendant, however, sought to show that the public had traveled over this strip of land and used the same as a public highway for a continuous period of more than five years since the 10th of January, 1873, and claimed that by reason of such user it had become a public high-

way. In this connection he stated that he did not expect to prove that the owner had shown any intention to dedicate the land as a public highway, except by showing such use, and it was admitted that no compensation had been paid to the plaintiff. Upon the objection of the plaintiff this evidence was excluded, and this ruling is now assigned as error.

The Political Code went into effect January 1, 1873, and section 2619 thereof provided that: "Roads laid out and recorded as highways by order of the board of supervisors, and all roads used as such for a period of five years are highways." In 1874 this section was amended by striking out the words "and all roads used as such for a period of five years," and the section as thus amended was in force upon that subject until the entire chapter upon the subject was repealed in 1883, and a new chapter substituted in its place, by which it is declared in section 2618: "In all counties of this state public highways are roads, streets, alleys, lanes, courts, places, trails, and bridges laid out or erected as such by the public, or, if laid out or erected by others, dedicated or abandoned to the public, or made such in actions for the partition of real property."

As there is no claim that the road in question has been laid out as such by the public, it cannot be held to be a public highway by virtue of this section, unless it is shown to have been "dedicated or abandoned to the public" by the owner of the land. The finding that the premises had been inclosed for a period of more than ten years prior to the alleged trespasses is inconsistent with an abandonment of them to the public, and shows that the road had not been laid out or erected over them, and it was stated by the defendant at the trial that he did not expect to prove any intention on the part of the owner to dedicate the land as a public highway, except by proving its use by the public. Unless, therefore, the road in question had become a public highway prior to 1883, the offer of proof on the part of the defendant was insufficient to establish its existence as a highway,

and was properly excluded. Dedication must be made by the owner of the land, and exists only when he has manifested some intention to make the dedication. "It is never to be presumed without evidence of unequivocal intention on the part of the owner." (*Quinn* v. *Anderson*, 70 Cal. 456.)

The fact that the land had been inclosed by a fence would show that any use of it by the public was only permissive, and "has always been considered as strong evidence in support of a mere license to the public to pass over the designated way, and in rebuttal of a dedication to public use." (*Quinn* v. *Anderson*, 70 Cal. 456.) Private property cannot be taken for public use without compensation, either by direct proceedings for that purpose, or by a mere user on the part of the public, unless the use has been so adverse as to prevent the owner from asserting title thereto, and for this purpose it must be shown that the user was adverse. "Where the dedication as a highway is sought to be established by user, it must appear that such user was with the knowledge of the owner, and with his consent, or without objection on his part." (*Hope* v. *Barnett*, 78 Cal. 14.)

The provision in section 2619 of the code, as it was originally enacted, declaring that all roads used as such for a period of five years are highways, having been superseded by the amendment of that section in 1874, cannot be invoked as an authority for the creation of a highway by mere user. By the amendment of the section its provisions, as originally enacted, were obliterated from the statutes of the state, and the amended section was thereafter the only statutory provision upon that subject. The amendment was made by an act passed March 30, 1874 (Am. to Codes, 1873–74, p. 116), in which several other sections in relation to highways were amended, of which section 38 provides that: "This act shall apply only to the following named counties (designating them.)" This limitation of the section to certain enumerated counties did not, however,

have the effect of retaining the original section in force upon the statute book. By its amendment it was repealed, and the effect of section 38 was to limit the statutory provisions of the amended sections to the enumerated counties, and leave the remaining counties of the state unaffected by the provisions of the Civil Code upon the subjects embraced in those sections. The constitution, article IV, section 24, declares that: "No law shall be revised or amended by reference to its title; but in such cases the act revised or section amended shall be re-enacted and published at length as revised or amended." It was held in *Billings* v. *Harvey*, 6 Cal. 381, that under this provision of the constitution, "If a statute or section of a statute is re-enacted, it is totally inconsistent with the idea that the old statute or section still remains in force, or has vitality for any purpose whatever. The re-enactment creates anew the rule of action, and, even if there was not the slightest difference in the phraseology of the two, the latter alone can be referred to as the law, and the former stands to all intents as if absolutely and expressly repealed." This rule of construction was afterwards reaffirmed by the court in *Billings* v. *Hall*, 7 Cal. 3; *Morton* v. *Folger*, 15 Cal. 284; *Clarke* v. *Huber*, 25 Cal. 594; *Bensley* v. *Ellis*, 39 Cal. 313; *People* v. *Tisdale*, 57 Cal. 104. When section 2619 was, in 1874, "amended to read as follows," the section, as it had previously stood upon the statute book, ceased to have any statutory force, and was no longer a portion of the laws of the state. The provision of section 38 of the act by which the amendment was made limited the effect of the amended section to certain enumerated counties, but did not have the effect of continuing the original section in force in the other counties. The section as amended is to be construed as if the designated counties had been specified in the section itself, and as if it had been amended to read: "In the counties of [designating them], roads laid out and recorded as highways, by order of the board of supervisors, are highways." If the sec-

tion had been amended in this form there would be no
room for construction, or, if the amendatory act had
provided that the sections, as originally enacted, should
remain in force in the remaining counties in the state
the legislative will would have been manifest and up-
held, since the constitution in force at that time did not
prohibit local legislation. In the absence of such sav-
ing clause, however, the effect of the amendment was to
make the section local in its application, and to leave
the other counties of the state without any provisions
in the code upon the subject. We are not unmindful
of the fact that in *Gloster* v. *Wade*, 78 Cal. 407, it was
held that the effect of section 38 in the amendatory act
of 1874 was to leave the provisions of section 2619, as
originally enacted, in force in all the counties, except
those enumerated in said section 38, and to cause the
provisions of the amended section to be applicable only
to the designated counties, thus in effect leaving section
2619, as originally enacted, in force after it had been
superseded by its amendment. This construction is,
however, at variance with the provisions of the consti-
tution, as expounded in the foregoing cases, and we
must regard the constitution as of higher authority
than the decision in that case, and, therefore, decline to
follow it as an authority.

The suggestion that this construction of the effect of
the act of 1874 would destroy the existence of a road
law in most of the counties of the state, from 1874 to
1883, and invalidate all action that had been taken in
those counties, loses its force upon a consideration of
the Civil Code in connection with the law on this sub-
ject as it existed prior to 1873. It is well known that,
prior to the adoption of the codes, it was customary for
the legislature to enact special road laws for individual
counties in the state, adapting the provisions of those
laws to the needs of the respective counties. This mode
of legislation began as early as 1858, the legislature
having in that year enacted road laws for seven differ-
ent counties in the state; and the general road law which

was adopted in 1861 excepted a large number of counties from its operation.   In 1872, at the same session of the legislature in which the codes were adopted, special road laws were enacted for fifteen different counties in the state, and acts amending the existing road laws for thirteen other counties.

When the compilers of the codes made their report to the legislature they recognized the existence of these various laws, and proposed two alternative chapters upon the subject of highways, one substantially in the form as it was enacted, and another declaring that none of the provisions of the codes should affect any of the provisions of these laws, but that they should be continued in force notwithstanding the provisions of the Political Code.   The legislature, however, instead of adopting either of these chapters by itself, combined the two, and added to the chapter on highways section 2757 of the Political Code, as follows: "Nothing in this chapter affects the provisions of any statute in relation to roads and highways now in force, and made applicable to one or more counties by name; but whenever any such statute is repealed, then the provisions of this chapter are applicable to the county named in the statute repealed."   When the amendments of 1874 were adopted, this section, with several others of the chapter, were retained, so that the provisions contained in these laws continued in force until 1883, when the entire chapter was revised and all special laws relating to roads were repealed.   At the session in 1874, when these amendments were adopted, the special laws applicable to the greater portion of the counties enumerated in section 38 of the amendatory act were repealed, and at subsequent sessions statutes were enacted providing special road laws for some of the same counties— Contra Costa, Sacramento, Fresno, Butte, and others. In 1876 a special road law was enacted for Lassen county (Stats. 1876, p. 539), in which "all the provisions of the Political Code in relation to highways" were made applicable to that county.   Similar provisions

have been made in road laws enacted for other counties since 1874, San Bernardino (Stats. 1876, p. 57); Butte (Stats. 1856, p. 72); Fresno (Stats. 1878, p. 859), and others. From these facts it is apparent that it could not have been the understanding of the legislature that those provisions of the Political Code, as they were originally adopted, and as found in the sections enumerated in the amendatory act of 1874, were both in force, and unless it be held that by the amending of the sections the original ones were repealed, there would be in some of these acts contradictory and irreconcilable provisions. Under these provisions of the code it ought to be assumed that if any roads were established or improved in any of these counties during this period the work was done under the provisions of these special acts rather than under a law which was inapplicable to those counties.

The judgment is affirmed.

DE HAVEN, J., PATERSON, J., GAROUTTE, J., and MC-FARLAND, concurred.

BEATTY, C. J., dissenting.—There are several grounds elaborately presented in respondent's brief upon one or more of which the judgment of the superior court might perhaps be affirmed, but these matters having been passed over in the opinion of the court it would be profitless to discuss them in a dissenting opinion, and, therefore, I shall make no attempt to do so. It would not be proper, however, to say that I dissent from the judgment without meeting and disposing of the question so presented, and I do not say so. I merely wish to express my dissent from the conclusion and reasoning of the court upon the single point decided in its opinion.

As one of those who participated in the decision of *Gloster* v. *Wade*, 78 Cal. 407—here overruled— I am perfectly willing to concede that the provisions of the constitution are of higher authority than that decision, or any decision, but I am unable to perceive the applica-

tion of the doctrine. The provision of the constitution alluded to prescribes the method of amending statutes, and the entire sum and substance of the decisions cited upon its construction is that when a section of the statute is amended, as the constitution directs, the old section ceases to exist at the same time that the new and amended section comes into operation. But none of those cases involved the effect of a saving clause, and, while they are undoubtedly correct as far as they go, the doctrine which they establish is in nowise inconsistent with the proposition conceded in this opinion, that the legislature in amending a statute, or part of a statute, may, by a saving clause, continue the old section or statute in force as to classes of persons, or parts of the state. This proposition was very recently affirmed here in a case which received more careful, and, I may say, more anxious, consideration, than any case that has been before the court during the time that I have participated in its deliberations. In the case of *People* v. *McNulty*, 93 Cal. 427, it was held that various sections of the Penal Code relating to the mode of executing a sentence of death were kept in force as to all capital offenses committed prior to their amendment, by virtue of a general saving clause contained in section 329 of the Political Code, and there can be no distinction in principle between a saving clause which keeps a road law in force after amendment as to certain counties of the state and one which keeps a penal statute in force after amendment as to a certain class of offenders.

The legislature then having the undoubted power to preserve the old road law as to a part of the state by a saving clause, the only question in *Gloster* v. *Wade*, 78 Cal. 407, was one of statutory construction, whether, in other words, the legislature had by section 38 of the act of 1874 manifested its intention so to preserve the old law in all except the enumerated counties. If it had, by language which, however equivocal, fairly expressed such an intention, there could be no question that it must prevail. After due deliberation the court in Bank,

without any dissent, adopted the opinion unanimously concurred in by the commissioners, that section 38 was intended to operate as a saving clause, and afterwards a petition for a rehearing was denied, again without dissent expressed by any member of the court.

This decision was, in my opinion, correct, but even if it was erroneous in putting a wrong construction upon the statute, I cannot see how it violated the constitution. It certainly did not concede to the legislature any power which it does not possess, but merely affirmed an intention to exercise a power the existence of which no one denies. And, unless a contrary meaning is so clearly expressed in the statute as to admit of no difference of opinion, it seems to me that a decision made under such circumstances, concurred in apparently by the whole court and all the commissioners, and deliberately reaffirmed on petition for rehearing, ought to be deemed sufficient authority to call for the same decision here.

But *Gloster* v. *Wade*, 78 Cal. 407, is not wholly unsupported. If any law-writer is entitled to be deemed authority upon the statute law of California, Mr. Hittell may fairly claim that honor. His compilations of the statutes and codes were for many years, and until superseded in part by later compilations, commonly cited in all the courts of the state, and certainly enjoyed the reputation of being accurate and trustworthy, which they could not have been if prepared by a compiler ignorant of the effect and construction of saving and repealing clauses. Upon these points I should say that he might properly be regarded as an expert. Now, by reference to a note under section 2619 of Hittell's Political Code, 1876, it will be seen that he placed precisely the same construction upon section 38 of the act of 1874, that was subsequently given to it by this court in *Gloster* v. *Wade*, 78 Cal. 407. And not only did Mr. Hittell give it that construction, it was so construed and acted upon throughout the state, from the date of its passage, for a period of nine years and until the road law was revised and re-enacted by the statute of 1883.

For it is to be observed that not only section 2619 of the Political Code was amended by the act of 1874; more than thirty other sections of the road law, embracing every important provision in it, were either amended or directly repealed by the same act, and, upon the doctrine of the present case, it follows that there was no road law in most of the counties of the state from 1874 to 1883. There was, during that period, not only no statute defining a road, there was no law for establishing, erecting, improving, or maintaining a road or bridge. No road district could be created, no road overseer appointed, no tax collected. Yet it is notorious that all these things were continually done throughout the state under the assumed authority of the statute during the entire period when, as we are now told, there was no statute. This is certainly remarkable.

But aside from the mere authority of our former decision, the opinion of Mr. Hittell, and the practical construction of all public officers charged with the care of public roads and bridges for a period of nine years, I rest confidently on the language of section 38 to justify a construction which carried out what no one can doubt was the actual intention of the legislature.

"This act shall apply only to the following counties: Calaveras," etc. By the words "this act" the legislature could have intended no other act than that of which the section was a part, viz., the amendatory act of 1874, and not the Political Code, of which section 38 never became a part. This act then amending the Political Code was to apply only to the enumerated counties, but how could this be so if it repealed the Political Code in all other counties?

The amendatory act (the only act to which the words "this act" in section 38 can possibly apply) is entitled "An act to amend the Political Code in relation to highways," and all its operative clauses are in strict conformity to its title, as the following examples will show:

"SECTION 1. Section 2619 of said code is hereby amended so as to read as follows:

"Sec. 4. Sections 2645 and 2646 are hereby repealed."

These, I repeat, were the operative clauses of "this act," and if "this act" applied only to certain enumerated counties, and by necessary consequence had no operation in the non-enumerated counties, then, as to such counties, the designated sections of the Political Code were neither amended nor repealed. This, it appears to me, is the plain and obvious and common sense construction of section 38 of the act of 1874, and was, beyond a doubt, what the legislature actually intended.