[File No. 6780.]

THE STATE OF NORTH DAKOTA EX REL. ALVIN C. STRUTZ, as Attorney General of the State of North Dakota, Respondent, v. BERTA E. BAKER, State Auditor of the State of North Dakota, and John Gray, State Tax Commissioner of the State of North Dakota, Defendants,

and

JOHN GRAY, State Tax Commissioner of the State of North Dakota, Appellant.

(299 NW 574)

154

Opinion filed July 25, 1941.

*T. A. Thompson* (*George F. Shafer* on oral argument), for appellant.

*Alvin C. Strutz,* Attorney General, and *P. O. Sathre* and *Clifford Jansonius,* Assistant Attorneys General, for respondent.

BURR, Ch. J.  The "Motor Vehicle Fuel Tax Act," known as chapter 195 of the Session Laws of 1941, is entitled:  "An Act Transferring the administration of the Motor Vehicle Fuel Tax Laws and the collection of Motor Vehicle Fuel Taxes from the State Auditor to the State Tax Commissioner, together with the administration of licensing Sellers and Buyers of tax exempt Motor Vehicle Fuel and the granting of refunds of Motor Vehicle Fuel Taxes as provided by the Initiated Measure of June 30, 1926, with amendments thereto, and Laws of 1939, chapter 147, and Laws of 1939, chapter 170, pertaining to Motor Vehicle Fuel Taxes, and transferring all the rights, powers and duties now placed in the State Auditor and the State Auditor's Department under the laws to the State Tax Commissioner, together with the files, records, equipment and supplies pertaining thereto, and repealing all Acts and parts of Acts in conflict therewith."

The measure received a majority of the votes in each house of the legislature, and was signed by the governor, but it did not receive the vote "of two thirds of all the members elected to each house."  An action was brought to have the law declared null and void and the state tax commissioner enjoined from interfering in any way with the work of the state auditor.

The district court held that the purported act had not received the requisite constitutional vote to insure its adoption, and the commissioner was permanently "restrained and enjoined from assuming or taking jurisdiction of or over any rights, power and duties possessed by the State Auditor and the State Auditor's Department under the initiated measure of June 30th, 1926, or amendments lawfully enacted thereto, relating to motor vehicle fuel tax law."

Judgment was entered accordingly, and the commissioner appeals.

A measure, known as the Gasoline Tax Measure, the title of which prescribes:  "An Act to Impose a Tax Upon the Sale of Motor Vehicle Fuels; Providing for the Collection of Said Tax, for Reports of Sales of Such Motor Fuels and for the Disposition of the Revenue Derived Therefrom; Regulating the Sale of Such Fuels and Fixing Penalties

for the Violation of This Act. Repealing all Acts or parts of Acts in conflict with the provisions of this act," was initiated, and approved by the people at the election held June 30, 1926.

This measure consists of ten sections. Section 1 is devoted to the definition of the terms, "Motor vehicles," "Motor vehicle fuels," and "Dealer."

Section 2 requires every dealer in motor vehicle fuel to "render to the state auditor on forms prescribed, prepared, and furnished by the state auditor, a sworn statement of the number of gallons of motor vehicle fuel sold or used by him . . . during the preceding calendar month. . . ."

It requires him to "pay a license tax of two cents per gallon on all motor vehicle fuel used and sold by him. . . ."

Section 3 permits such dealer to charge and collect this license tax "as a part of the selling price."

Section 4 requires such dealers to "file a duly acknowledged certificate with the state auditor, on forms prescribed, prepared and furnished by the said state auditor," showing the name under which he transacts business and the place or places of business.

Section 5 specifies when this license tax shall be paid to the state auditor and makes provision for the state auditor's turning over the money to the state treasurer to be credited to the state highway commission and appropriated and used by the commission for the highways under its jurisdiction.

Section 6 makes provision for the reimbursement to purchasers by the state auditor of the sums paid by them for motor vehicle fuel furnished for certain purposes and provides the method of making reimbursement.

Section 7 requires the records of all such dealers to be open for "inspection by the state auditor or by any agent or employee thereof duly authorized by him."

Section 8 makes it unlawful for any person to accept from any dealer in the original package any such motor vehicle fuel without having the invoice delivered, and requires all purchasers of motor vehicle fuel "in the original package in which the same shall have been imported" to

pay to the state auditor the tax provided in the act in case the dealer has not made payment.

Section 9 makes general provision for penalties for violating any provisions of the act.

Section 10 is merely the usual repealing clause attached to statutes.

This act was initiated under the provisions of § 25 of the Constitution of this state, as amended by what is known as article 26 of the amendments. This section of the Constitution prescribes that "The word 'measure' as used herein shall include any law or amendment thereto . . . or enactment of any character.

". . . No measures enacted or approved by a vote of the electors shall be repealed or amended by the legislature, except upon a yea and nay vote upon roll call of two thirds of all the members elected to each house."

Legislation by "Initiation" is a power which the people have reserved to themselves under the provisions of our Constitution. It is subject to the constitutional provisions provided for the enactment of legislation. See Preckel v. Byrne, 62 ND 356, 361, 243 NW 823, 825.

The people legislate through their agent known as the legislature, or may legislate as prescribed by this section 25 of the Constitution as amended. When the people legislate by their agent, the legislature has the power to amend and repeal its own acts when in its judgment it sees fit; but with reference to initiated measures, this power of the legislature is limited partially. Such initiated measure may not be repealed or amended "except upon a yea and nay vote upon roll call of two thirds of all the members elected to each house." See State ex rel. Truax v. Smart, 48 ND 326, 184 NW 623; Boutrous v. Thoresen, 54 ND 289, 209 NW 558.

The history of the legislation dealing with this initiated measure shows that from time to time several amendments were made. Chapter 178 of the Session Laws of 1927 purported "to Amend and Re-enact § 5 of the Initiated Measure," but did not in any way affect the duties of the auditor, and still required that officer to receipt for the license tax, pay the money over to the state treasurer to be credited to the state highway commission for the construction and maintenance of the highways under its jurisdiction. This amendment received the requi-

site two-thirds vote. The effect of "re-enactment" and its scope is well set forth in Jessee v. De Shong (Tex Civ App) 105 SW 1011, 1015. Re-enactment continues the law in force. There may be some changes, but the law is the same law, so far as *law* is concerned.

Chapter 166 of the Session Laws of 1929 is "An Act to amend and re-enact §§ 2, 3, 4, 5, and 6 of the initiated measure."

Certain amendments were made in these sections dealing with the duties of the dealer in motor vehicle fuel, requiring him to be the holder of a license issued by the state auditor, providing for the revo-cation of the license, furnishing of a bond, and such matters, as well as the increase of the tax from two cents per gallon to three cents. This amendment also made some changes with reference to the method of the state treasurer in crediting the amount of money received and in the method of reimbursement to the ones who paid tax on motor vehicle fuel when the same fuel was to be used for certain specific purposes. The purpose and principle of the initiated measure in placing the administration in the hands of the auditor remained unchanged in any particular. This chapter 166 of the Laws of 1929 received the requisite two-thirds vote of the members elected in each house.

In 1931 the legislature amended and re-enacted §§ 2, 3, and 5 of the initiated measure, but the proposed amendment was referred and disapproved.

In 1935 the legislature enacted chapter 172 of the Session Laws of that session, amending and re-enacting § 4 of chapter 166 of the Laws of 1929 (which had amended § 4 of the initiated measure), and also amending and re-enacting § .6 of chapter 189 of the Laws of 1931 (which had amended § 6 of the initiated measure). These amendments do not in any manner remove power of administration from the state auditor's office except in the matter of refunds.

In 1939 the legislature enacted chapter 147 of the Laws for that year, which was intended to repeal chapter 189 of the Laws of 1931, and otherwise purports to be a general law dealing with the "purchase of gasoline to be used solely for agricultural and industrial purposes without the payment of a gasoline tax on the purchase price thereof; licensing purchasers and sellers; providing penalties; . . ."

However, nowhere is the Law of 1931 repealed by specific declaration.

This chapter 189 of the Laws of 1931 had amended and re-enacted chapter 166 of the Laws of 1929, which had amended and re-enacted five sections of the initiated measure. It is in chapter 189 of the Laws of 1931 we have the first reference to the tax commissioner, and this dealt merely with refunds. The applicant for a refund presented his petition to the commissioner rather than to the state auditor, and the auditor paid after the commissioner passed upon the application.

Chapter 147 of the Session Laws of 1939, in the title, provides that the act is to repeal "chapter 189 of the Session Laws of North Dakota for 1931," and apparently replaces refunds in the hands of the state auditor, for the statute deals with the purchase of gasoline to be used solely for agricultural and industrial purposes; provides that this gasoline is tax exempt; that the auditor issue the licenses to sell this tax exempt gasoline; has the power to formulate rules and regulations for the administration of the law; and that the purchasers are entitled to the refund as provided by chapter 189 of the Laws of 1931, which is the law which this chapter 147, by its title, states is intended to be repealed. Clearly, it was the intent of the legislature in chapter 147 of the Laws of 1939 to supplement the initiated measure in so far as the same had not been amended constitutionally.

This statute (chap 147) deals largely with the matters involved in the initiated measure of 1926, provides for the issuing of licenses by the state auditor, the giving of receipts by the dealer in the form and colors prescribed by the auditor, the filing of copies of the receipts with the auditor, the right of that official to refuse to issue a license and to cancel licenses already issued, the payment to the state treasurer of the fees collected by the auditor, and authorizes the auditor "to formulate rules and regulations for the administration of this act. . . . "

Though this chapter 147 of the Session Laws of 1939 does not in express terms refer to the measure initiated in 1926, nevertheless, it is legislation on the same subject; changes the method of administration of the initiated law and some of its provisions; and to that extent amends certain portions of the initiated measure; or, if considered

preferable to state it otherwise, it repeals those provisions not in harmony with the provisions of chapter 147 of the Session Laws of 1939, and substitutes therefor the provisions stated in the chapter.

This appears to be the history of the legislation dealing with the initiated measure known as "The Gasoline Tax Measure," the title of which has heretofore been set forth. It is clear, therefore, that certain sections of this initiated measure, to wit, §§ 1, 7, 8, 9, and 10 of the initiated measure, were not amended at any time prior to 1941.

Through all of this legislation, the administration of the motor vehicle fuel tax has been in the hands of the state auditor, and under the supervision of that official, except in the matter of refunds. The amendments, in general, follow the language of the initiated measure, adopt its purport, and continue it in effect. It is the initiated measure with amendments in details as made by the legislature.

Chapter 195 of the Session Laws of 1941, omitting the title, is as follows:

"Sec. 1. All of the rights, powers and duties formerly possessed by the State Auditor and the State Auditor's Department under the Initiated Measure of June 30, 1926, with amendments thereto, relating to motor vehicle fuel tax laws, the collection of taxes, the licensing of purchasers and dealers, the administration of refunds and all of the rights, powers and duties formerly possessed by the State Auditor and the State Auditor's Department in the administration of Chapter 147, Laws of 1939 and Chapter 170, Laws of 1939, are hereby transferred to the State Tax Commissioner who, from the effective date of this Act, shall assume the administration of such laws relative to the collection of motor vehicle fuel taxes, the licensing of purchasers and sellers of tax exempt motor vehicle fuel, the granting of refunds and all other rights and duties under said laws.

"Whenever the officer designated in said laws as the State Auditor shall be granted any power or charged with the performance of any duty in connection with the enforcement and administration of any laws heretofore specified, or any acts amendatory thereto, said power so vested in said State Auditor shall be vested in the State Tax Commissioner, and said State Tax Commissioner and his assistants shall

perform all of the duties required by said laws to be performed by said State Auditor or the State Auditor's Department.

"Sec. 2. All of the files and records in the State Auditor's Office, pertaining to the administration of the motor vehicle fuel tax laws, together with all equipment and supplies pertaining thereto, shall be transferred from the State Auditor's Office to the office of the State Tax Commissioner.

"Sec. 3. All Acts and parts of Acts in conflict herewith are hereby repealed."

It is the purpose of this act to so alter the initiated measure of 1926 that its entire administration is taken from the auditor and lodged with the commissioner.

It being admitted that chapter 195 of the Session Laws of 1941 did not receive a two-thirds vote of the members elected in each house, it becomes important to determine whether, under the Constitution, it was necessary for this bill to receive such a vote before it became a law.

Appellants contend that because certain portions of the initiated measure had been amended by the requisite constitutional vote, therefore, because of such amendment, the initiated measure ceased to be such in law, and the measure as amended became a legislative enactment, no longer subject to this constitutional limitation as to legislative vote.

As pointed out in State ex rel. Forchheimer v. Le Blond, 108 Ohio St 41, 50, 140 NE 491, 494, "A broad definition of the word 'amendment' would include any alteration or change. . . ."

"In legislative parlance 'amendment' is an alteration or change of something . . . established at law." The distinction between an amendment and a revision is set forth in this decision, State ex rel. Corry v. Cooney, 70 Mont 355, 361, 225 P 1007, 1009. A repeal destroys; an amendment keeps alive. The distinction between the terms is well stated in State ex rel. Gamble v. Hubbard, 148 Ala 391, 41 So 903, 905. This view is cited and approved in Gregory v. Cockrell, 179 Ark 719, 18 SW(2d) 362.

"An amendment is a change or alteration of a law or of some of its provisions . . . and merely continues a law . . . in a changed form . . . . An amendatory act . . . never purports to repeal

an act or section as it previously existed but only changes or amends it to read as therein stated." Chicago v. American Tile & Gravel Co. 282 Ill 537, 540, 118 NE 730, 731.

See also State ex rel. Crain v. Moore, 339 Mo 492, 496, 99 SW (2d) 17, 19.

In De Motte v. De Motte, 364 Ill 421, 4 NE(2d) 960, the court was construing a statute which on its face appeared to be independent, but in fact merely introduced new features into the old act, and held such change to be an amendment, quoting with approval this rule set forth in Galpin v. Chicago, 269 Ill 27, 36, 109 NE 713, 716, LRA 1917B, 176; "even though an act professes to be an independent act and does not purport to amend any prior act, still if, in fact, it makes changes in an existing act by adding new provisions and mingling the new with the old on the same subject so as to make of the old and the new a connected piece of legislation covering the same subject, the latter act must be considered an amendment of the former."

Appellants contend further that this chapter 195 is not an "amendment" as the term is used in § 25 of the Constitution as amended, but merely transfers its adminstration from one department to another.

This contention that the transfer of the power of administration from the state auditor to the tax commissioner is not an amendment of the initiated measure is based upon the theory there is no amendment or change in the powers—merely a transfer. However, where powers are transferred in such manner, the provision of the initiative measure is interfered with; and, therefore, the transfer of the duties from the auditor to the commissioner is either a repeal of that portion of the initiated measure, or it is an amendment. In either event, it is subject to the constitutional provision under consideration.

Where an independent statute transferred to a board of police commissioners of the city the power to regulate the police department, which power had been and was lodged in the mayor and aldermen by the municipal charter, it was held that such proposed change was an "amendment" of the charter. Little v. State, 137 Ala 659, 35 So 134.

It is the contention of the respondent that where an initiated measure consists of several sections, some of which have been amended properly and some remain unamended, any subsequent attempt to amend any of

these provisions must be tested by the constitutional provision which limits the power of the legislature, and such attempted amendment must have the vote prescribed by the Constitution; that an amendment does not destroy the effect of the initiation, but the initiated measure remains with life and in operation.

Chapter 195 of the Laws of 1941 is an amendment of the initiated measure. It transfers the administration of the law covering the whole field from the office of the state auditor to that of the state tax commissioner. It also deals with that part of the initiated measure which heretofore has been unamended. It is, therefore, at variance with the expressed will of the people, and a change thereof.

For the people, through the initiative, to say that certain duties shall be performed by the state auditor is a clear statement of the will of the people. For the legislature to change this provision is an exercise of power over an initiated measure. In such case the exercise must be in harmony with the constitutional provisions.

Much has been said in brief and argument on the equality of the legislation enacted by the legislature with that enacted by the people.

Section 25 of the Constitution, as amended by article 26 of the amendments, provides an additional method of legislation from that contained in the original Constitution. These two methods, their scope and purpose, are referred to in Baird v. Burke County, 53 ND 140, 148, 205 NW 17, 19, and State v. Houge, 67 ND 251, 259, 271 NW 677, 681. Were it not for the constitutional provision quoted, there would be no constitutional provision preventing a legislature from repealing or amending the measure in whole or in part. But our Constitution places a limitation upon such right of the agent of the people to repeal or amend an initiated measure. It takes into consideration the necessity for change to accommodate law to changing conditions; but it also recognizes the fact that such an initiated measure is the direct act of the people, and not its act through its agent; and, therefore, it is only when the overwhelming judgment of the agency indicates the necessity for a change that such change can be made. Clearly, it is the purpose of the Constitution to place special emphasis upon the act of the people when exercised directly.

This constitutional amendment, article 26, states that while the

legislative power of the state is vested in the legislature, "The people, however, reserve the power . . . to propose measures and to enact . . . the same at the polls . . . ." It further provides in harmony therewith that "The first power reserved is the initiative."

Before the legislature can affect an initiated measure, it must either repeal it or amend it. To claim that after an initiated measure is amended constitutionally by the legislature, it ceases to be the initiated measure and becomes purely the act of the legislature is, in effect, to claim that the initiated measure is repealed, for this measure must either exist or cease to exist.

"The intention to repeal and the intention to merely re-enact particular provisions of a former law are both determinable from the same source in the context and relation to the objects of the act, and must be separated and found which intent exists in the context and relation to the object of the act and this provision therein before the court can proceed to interpret it. The one term is opposed to the other. If it were the intention to merely re-enact the particular provision of a former law in the new act operative in its own terms and remedy independent of the other portions of the act, alike in the new as in the old act, there is no repeal, because repeal is the absolute doing away with for all purposes. If it were the intention to repeal the particular provision of the former law occurring in the new law, evidently not having the particular provision operative in its own terms independent of other portions of the act, or so interweaving it with other portions as to make it dependent upon other particular provisions for its enforcement, there is no mere re-enactment in the sense used, because re-enactment is to continue in force the particular provision unchanged and as it was before, and not do away with for any purpose." Jessee v. De Shong (Tex Civ App) 105 SW 1011, 1015, supra.

A statute amended does not lose its identity. It is still the statute. The initiated measure being amended constitutionally, it is the same as if the provision in the amendment had been in the bill as initiated. For the legislature to make another change of this same measure requires the same constitutional vote. This applies to every section of the initiated measure, whether amended or unamended.

Diligent search by counsel on both sides, as well as by the members

of this court, has disclosed no case similar to the one at bar. We do not find any decision dealing with a constitutional provision limiting amendment or repeal unless a certain vote is obtained in the legislature.

A study of the text in 28 Am Jur 177, Initiative, Referendum, and Recall, § 44 discloses differences of opinion as to the effect upon the legislature of a vote of the people through the initiative procedure. The illuminating note to 97 ALR 1046 discloses, however, this juristic approach—that where the legislature is limited in its attitude toward an initiated measure, such limitation holds good during the entire life of the measure.

If, in the judgment of the legislature, the purpose of the measure has been accomplished, and changes of condition require alteration, the legislature has the right to repeal the initiated measure by the constitutional vote. When once repealed, the measure is dead. Then the legislature may, as its judgment dictates, substitute such legislation as the exigencies of the occasion require.

Clearly, the people had this in view when article 26 of the amendments was adopted, for the legislature is given the power to repeal, as well as to amend. So long as the legislature does not see fit to repeal, then the law stands, and all amendments thereto must be made as required by the Constitution.

It is the clear intent of the Constitution that such an initiated measure shall remain a law, so far as the legislature is concerned, until repealed in the manner required. It is also clear that it is the constitutional intent that such an initiated measure shall remain a law, except in so far as it may be amended by its agent in a constitutional manner. Certainly, when this agent, vested with the power to amend under certain circumstances, amends only in part, the portion that is unamended still remains as the initiated measure and before such part may be changed, it must receive the constitutional vote required of the agent, the legislature. In addition, as pointed out, amendments to an initiated measure do not destroy the initiative character of the law. The initiated law is there until repealed. Hence, before the legislature in 1941 could amend the initiated measure by transferring all of the powers and duties therein conferred upon the state auditor to the state tax commissioner, such proposed change must have the approval of two-

thirds of the elected members of each house. Not having received such a vote, chapter 195 of the Session Laws of 1941 was not adopted constitutionally, and, therefore, is not a law of the state. The judgment of the lower court is affirmed.

CHRISTIANSON and NUESSLE, JJ., concur.

MORRIS, J., concurring specially. On June 30, 1926, the people by popular vote enacted an initiated measure imposing a tax upon the sale of motor vehicle fuels. It consisted of ten sections, nine of which set forth the law. The tenth section provided for the repeal of acts or parts of acts in conflict with the measure.

Section 25 of the North Dakota Constitution provides for the initiative and referendum. It contains the following, "No measures enacted or approved by a vote of the electors shall be repealed or amended by the legislature, except upon a yea and nay vote upon roll call of two thirds of all the members elected to each house."

The initiated measure provided for its administration by the state auditor. In 1941, the twenty-seventh legislative assembly, by chapter 195 of the Session Laws of that year, transferred to the state tax commissioner all the rights, powers and duties formerly possessed by the state auditor in connection with the administration of motor vehicle fuel taxes.

I agree with the majority of the court upon the following points involved in this controversy:

1. That prior to the enactment of chapter 195, N. D. Session Laws 1941, certain sections of the initiated measure had been amended by vote of two thirds of all the members elected to each house. The sections so amended are 2, 3, 4, 5 and 6.

2. That sections 1, 7, 8, 9 and 10 had not been amended.

3. That chapter 195, while not so reciting, is in fact an amendment of the initiated measure as amended by intervening legislative acts.

4. That chapter 195 sufficiently affects and modifies the operation of the unamended portions of the initiated measure so as to amount to an amendment or repeal of some of those portions and thus, could have only been validly enacted by a vote of two thirds of all the members elected to each house.

5. That chapter 195 failed to receive the constitutional majorities necessary to amend an initiated measure and therefore failed of passage.

I am unable to agree with those portions of the majority opinion that lead to the conclusion that an initiated or referred measure having once been adopted by popular vote, ever after requires a two-thirds vote in each house to amend or repeal it regardless of the number of valid amendments enacted by the legislature. Once a popular measure always a popular measure, is a conclusion with which I cannot agree.

Prior to the adoption of § 25 of the Constitution the legislative power of the state was vested in the legislature. Section 25 vested that power in both the legislature and the people. Except where specifically provided by the Constitution, laws enacted by either the legislature or the people are of equal rank. They are all subject to amendment or repeal by the action of either the legislature or the people. The only restriction upon the amendment or repeal of a measure approved by the people is the requirement that the legislature act by a two-thirds vote of both houses.

The question that deeply concerns me is whether, after the legislature has amended a popular measure by a two-thirds vote, the section or sections so amended still retain their original quality so as to require a two-thirds vote for further amendment, or are to be treated thereafter as legislative enactments rather than popular measures. I am of the opinion that when the legislature, by a two-thirds vote in both houses, has "amended and re-enacted to read as follows" any section or sections of an initiated measure, those sections are thereafter to be considered legislative enactments subject to amendment or repeal as such.

Successive legislative assemblies are empowered to legislate by majority vote without respect to what preceding assemblies have done. It is a fundamental principle of American government that one legislature may not tie the hands of its successors. One legislative assembly may not write into the laws a statute which a succeeding assembly may not amend or repeal by a majority vote. The majority opinion would modify that principle by making an exception of legislative amendments to popular measures and thus permit one legislature by amendment to incorporate into a popular measure provisions of laws, germane

168

thereto, which were never thought of by the framers of the measure or the people who enacted it thereby giving to these new provisions the same sanctity as the old and tying the hands of majorities in succeeding legislative assemblies. This modification is a two-edged sword that may sever some of the sinews of popular government while seeming to shield others.

"1. The provisions of § 25 of the Constitution, relating to initiated and referred legislation, are a part of article 2 of the Constitution, relating to the legislative department, and initiated and referred legislation is subject to all constitutional restrictions the same as laws passed by the legislative assembly." Syllabus. State ex rel. Gammons v. Shafer, 63 ND 128, 246 NW 874.

Section 64 of our Constitution provides that, "No bill shall be revised or amended, nor the provisions thereof extended or incorporated in any other bill by reference to its title only, but so much thereof as is revised, amended or extended or so incorporated shall be re-enacted and published at length."

In considering the effect of an amendment to a statute in the light of a similar section of the California Constitution, the supreme court of that state said, "The Constitution (article 4, § 24) declares that 'no law shall be revised or amended by reference to its title; but in such cases the act revised or section amended shall be re-enacted and published at length as revised or amended.' It was held in Billings v. Harvey, 6 Cal 381, that under this provision of the constitution, 'if a statute or section of a statute is re-enacted, it is totally inconsistent with the idea that the old statute or section still remains in force, or has vitality for any purpose whatever. The re-enactment creates anew the rule of action, and, even if there was not the slightest difference in the phraseology of the two, the latter alone can be referred to as the law, and the former stands, to all intents, as if absolutely and expressly repealed.' This rule of construction was afterwards reaffirmed by the court in Billings v. Hall, 7 Cal 3; Morton v. Folger, 15 Cal 284; Clarke v. Huber, 25 Cal 594; Bensley v. Ellis, 39 Cal 313; People v. Tisdale, 57 Cal 104. When § 2619 was, in 1874, 'amended to read as follows,' the section, as it had previously stood upon the statute book, ceased to have any statutory force, and was no

longer a portion of the laws of the state." Huffman v. Hall, 102 Cal 26, 36 P 417.

The principle thus enunciated by the supreme court of California is applicable to the amendment of an initiated measure by the legislature. After the legislature has "amended and re-enacted to read as follows" any section of a popular measure, that section is thereafter a legislative enactment that amends and supersedes the old law. "From the time of the passage of the new statute, the whole force of the enactment rests upon the latter statute" even though as indicated by the cases cited in the majority opinion the amendment keeps alive the legal rights and remedies that are carried over into the new enactment. People ex rel. Canajoharie Nat. Bank v. Montgomery County. 67 NY 109, 23 Am Rep 94; People v. Lowell, 250 Mich 349, 230 NW 202.

We are here dealing with procedure pertaining to legislative enactments and not with substantive rights that may be carried through without interruption from one enactment to another by means of amendments. I can find no better or more conclusive statement than that contained in § 237, Lewis's Sutherland, Statutory Construction, 2d ed. which says, "The portions of the amended sections which are merely copied without change are not to be considered as repealed and again enacted, but to have been the law all along; and the new parts or the changed portions are not to be taken to have been the law at any time prior to the passage of the amended act. The change takes effect prospectively according to the general rule. *But all the provisions of the prior law amended which continue in force after the passage of the amendatory act derive their force thereafter not from the original but the amendatory act, and as to the future the old act or section is repealed in toto."* (Italics supplied.)

My reasoning and the foregoing authorities lead me to the definite conclusion that any section or sections of a popular measure that have been "amended and re-enacted to read as follows" by an affirmative vote of two thirds of all the members elected to each house of the legislative assembly is thereafter a legislative enactment and may be amended or repealed by a majority vote.

BURKE, J. I concur in the opinion prepared by Judge Morris.