No. 28,047.

THE STATE OF KANSAS, *Appellee*, v. J. D. HAYES, *Appellant*.

(263 Pac. 782.)

SYLLABUS BY THE COURT.

1. HIGHWAYS—*Criminal Prosecution for Obstruction—Location and Legality*. Where the defendant is charged under R. S. 68-545 with the crime of obstructing a public highway, which has been laid out, worked and regularly used as such by the public for a number of years, it is immaterial whether the road was technically and accurately located in the exact place originally intended, except in so far as such discrepancy may be considered in determining the intent of the defendant.

2. CRIMINAL LAW—*Intent—Presumption from Acts*. Where intent is an ingredient of the crime charged, the acts of the defendant in connection with the incident in question are proper to be considered by the jury, as well as the statements of the defendant that he believed he had certain rights.

3. SAME—*Instructions—Belief in Right as Determining Intent*. An instruction telling the jury to take into consideration the acts of the defendant and all the circumstances of the case, as well as the defendant's belief in his rights, in order to determine his intent is not singling out one particular part of the testimony to the prejudice of the defendant, because his expressed belief alone does not determine the question of intent.

4. HIGHWAYS—*Criminal Prosecution for Obstruction—Instructions*. We find no error in either refusing to give certain requested instructions or in giving other instructions.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge. Opinion filed February 11, 1928. Affirmed.

*A. E. Crane, B. F. Messick, A. H. Crane*, all of Topeka, *E. C. Brookens* and *E. S. Francis*, both of Westmoreland, for the appellant.

*William A. Smith*, attorney-general, *Roland Boynton*, assistant attorney-general, and *C. A. Leinbach*, county attorney, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appellant was convicted under R. S. 68-545 of the crime of obstructing a public highway and was fined ten dollars and costs, and from such judgment and sentence appeals.

He assigns error on the part of the trial court in giving certain instructions and in refusing to give others, and contends that on the undisputed evidence and under the law of the case the defendant

Criminal Law, 16 C. J. pp. 81 n. 53, 565 n. 67, 971 n. 57; 8 R. C. L. 61. Highways, 29 C. J. pp. 621 n. 43, 641 n. 35, 645 n. 9; 13 R. C. L. 246.

should have been acquitted. It is admitted that he intentionally built a fence across both ends of a short road about one-fourth of a mile long, running east and west, connecting two north and south roads. It is also undisputed that the road so fenced runs through the land of the defendant, being located wholly upon lot 16. Lot 8, according to the government survey, lies immediately north of lot 16, and the defendant is also the owner of lot 8.

The obstruction complained of occurred in June, 1927, and the county attorney of Pottawatomie county filed complaint against the defendant in July, 1927. The case regularly reached the district court, and there testimony as to the legality of the road and the exact location of it constituted the main portion of the evidence introduced, the defendant contending the highway was not a legal one, and he, being the owner of the land upon which it was located, had the right to close the road and use the land, which he did by planting it to a crop. He admits a road was laid out across his land, but claims it was not through lot 16, but along the south line of lot 8, wholly within lot 8, and 309 feet north of the obstructed road at the east end and 259 feet north of it at the west end. No road was ever opened up or used along the south line of lot 8. The road in question is the only one that was ever opened up or used in this vicinity. It ran on the north side of a growing hedge.

The proceedings had for the opening up of the road were introduced in evidence. The petition for the road asks that it commence at or near the northeast corner of lot 16, thence due west on the north side of a growing hedge. The surveyor's report describes the point of commencement as the "southeast corner of lot 8" (which is the same as the northeast corner of lot 16), and then adds in parenthesis that "it is intended to lay this road along north side of a growing hedge." In all the other papers, notices, reports, and journal entries it is described as being in lot 16 and along the north side of a growing hedge. The oral evidence shows it was opened up along the north side of the growing hedge, was fenced by the former owner of lots 8 and 16, and has been worked and used as a highway since 1913. The former owner received from the county $250 damages for the land taken and the cost of the fence. Defendant notified the officers about a year before he closed the road that he would do so if it was not moved about 300 feet north, where he claimed it was originally intended to have been located.

Appellant complains of the refusal of the trial court to give as

instructions the third and fourth paragraphs of the syllabus of the case of *Shanline v. Wiltsie,* 70 Kan. 177, 78 Pac. 436. This was, of course, good law, but it was announced in a civil case involving a controversy between owners of adjoining lands, where a road was intended to be located on the section line between them, and where dedication, acceptance, prescription, and limitations were invoked to determine the rights of the parties. We agree with the trial court that such instructions would not be applicable here. Some of the principles involved in these two paragraphs of the syllabus are included in the instructions of the court, particularly Nos. 7 and 8, of which complaint is made by the appellant, but they more nearly follow the theory of the court in the case of *Shaffer v. Weech,* 34 Kan. 595, 9 Pac. 202:

"Where the map and field notes of the surveyor who assisted in locating a public county road, which was afterward established and opened, show that the road was not located at precisely the same place where in fact it was originally located by the road viewers and opened by the road overseer, *held,* that the road is nevertheless established where it was originally located and opened.

"The map and field notes of the surveyor in such a case are only *prima facie* evidence of where the road was originally located, and are not conclusive." (Syl. ¶¶ 1, 2.)

There was no such discrepancy in the case at bar. Here the only departure by reference was in the surveyor's report as to the road starting at the southeast corner of lot 8 and being located in lot 8; and then immediately thereafter and with such definiteness as to overcome his corner and boundary-line description he says in parenthesis, "It is intended to lay this road along north side of a growing hedge."

Appellant cites an early criminal case under a similar statute where the defendant was acquitted, the syllabus of which is as follows:

"When the defendant owns a certain piece of land, and it is uncertain from the county records and otherwise whether any public road has ever been laid out across it, and such supposed road has never been opened by any competent authority, and there is but very little travel upon it, and the defendant, believing that such road has no legal or valid existence, plows up the same along with his other land, and plants corn thereon, and also, for the purpose of protecting his crops, places posts across such road so as to obstruct the same, *held,* that such conduct on the part of the defendant does not render him guilty of *willfully* obstructing a public road, even if said road was legally laid out and established." (*State v. Cummerford,* 16 Kan. 507, syl. ¶ 1.)

In that case the defendant was acquitted in the trial court and the county attorney went up to the supreme court on a question reserved. There it was uncertain from the records and otherwise whether a public road had even been laid out, it never having been opened by any competent authority; also, the statute required the obstructing to have been willfully done—very different from the facts and requirements in the case at bar. However, there is one part of the decision in the present case which supports instruction No. 7 given by the court, and that is where it is said, "Whether or not said road was properly laid out is immaterial in this case, except as to intent so defined in instruction 8." We think this is correct, although it would seem from the evidence introduced in this case parties deemed the legality of the road to be quite material.

"It is no defense that the highway is less than the statutory width; and one is not justified in obstructing a highway as opened and traveled merely because it does not correspond with the road as established. . . . It is immaterial that there is a dispute as to the existence of the highway or that the person causing the obstruction had no actual notice that the highway existed." (29 C. J. 621. See, also, *State v. Eisele*, 37 Minn. 256.)

Appellant claims the court erred in the eighth instruction because it singled out a part of the defendant's testimony with reference to his belief that he had a right to close the road, thereby calling attention to its insufficiency. The portion complained of has to do with the question of intent mentioned in the statute, and is as follows:

"The fact, if it be a fact, that the defendant merely testifies that he believes he had a right to obstruct the highway in the manner testified about would not of itself be sufficient."

The remaining portion of the instruction is as follows:

"But it is for you to say from the conduct of the defendant and all of the evidence and circumstances in the case, whether or not, in doing what he did, he acted upon an honest belief that he had a right to obstruct and plow up the highway in controversy."

We do not think this is singling out any particular part of the testimony. The defendant was attempting to exonerate himself from blame or censure by the statement that he believed he had a right to obstruct the highway. It was the duty of the court to instruct along that line and explain what was meant by the term "intent" as used in the statute under which he was being prosecuted.

"That it shall be unlawful for any person or persons to obstruct any public

State, *ex. rel.*, v. Montgomery County Comm'rs.

highway in any manner with intent to prevent the free use thereof, . . . and any person or persons violating the provisions of this section shall be guilty of a misdemeanor." (R. S. 68-545.)

"In contemplation of law every sane man is presumed to intend the natural and reasonable consequences of his own act." (*State v. Dull*, 67 Kan. 793, syl. ¶ 1, 74 Pac. 235.)

"A sane man is presumed to intend the necessary or the natural and probable consequences of his voluntary acts." (16 C. J. 81.)

"The general rule is that, if it is proved that the accused committed the unlawful act charged, it will be presumed that the act was done with a criminal intention, and it is for the accused to rebut this presumption. The act of itself is evidence of the intent; and it is no defense that the offender entertains a belief that the law is wrong." (16 C. J. 81.)

We find no error in the instructions given. The judgment is affirmed.