STATE EX REL. SULLIVAN, RELATOR, *v.* SCHOOL DISTRICT No. 1 OF SILVER BOW COUNTY ET AL., RESPONDENTS.

(No. 7,486.)

(Submitted October 3, 1935. Decided October 10, 1935.)

[50 Pac. (2d) 252.]

*Mr. Earle N. Genzberger,* for Relator, submitted a brief and argued the cause orally.

*Mr. H. J. Freebourn, Mr. N. A. Rotering* and *Mr. Clarence Hanley,* for Respondents, submitted a brief; *Mr. Hanley* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

Application for writ of injunction. This is the second application to this court for a writ of injunction by the state, on

relation of a taxpayer, against school district No. 1 of Silver Bow county and the trustees thereof, to prevent the issuance of bonds for the purpose of obtaining a loan from the federal government under the National Industrial Recovery Act. (48 Stat. 195.)

Heretofore, in the case of *State ex rel. Fisher, Relator,* v. *School District No. 1 of Silver Bow County, Respondents,* 97 Mont. 358, 34 Pac. (2d) 522, this court reviewed and approved the matter of an election held by the district as a condition precedent to the bonding of the district for the erection of a new high school building. That case involved the regularity and legal effect of an election held on February 3, 1934. The election and the procedure incident thereto, and the legal effect thereof, are again challenged in this proceeding. It is not necessary to restate all of the facts and incidents of the election. It is sufficient here to refer to the former opinion for a full statement of the case. We need only detail such facts as have a bearing on the new matter immediately under consideration.

It is sought to enjoin the respondent school district and its trustees from proceeding further to levy taxes on the property within the district to pay the bonds which it is proposed to issue under authority granted them by the electors at the February 3, 1934, election, and to enjoin and restrain the respondents from building or equipping a high school within the district on a site selected by the voters at the election, and from in any manner proceeding to carry out or perform the provisions of the agreement entered into between the respondents representing the district, and the government of the United States in the month of August, 1935, with reference to the borrowing of the sum of $440,000, or any other sum, and the selling of bonds for the repayment thereof. By stipulation the proceedings of the board and the contract of August 9, 1935, have been certified to this court, and are before the court for its information.

The facts on which relator bases his right to relief are briefly as follows: (1) Fraud and misrepresentations practiced by or with the knowledge of the board in connection with the elec-

tion. (2) Fraud and misrepresentation alleged to have been employed by the board in the closing of the Washington Junior High School. (3) Unauthorized acts of the board in passing the resolution of February 8, 1935, and in selecting the "central site" which had been theretofore disapproved by the electors. (4) Fraud and misrepresentation on the part of the board in connection with the election of April 7, 1934, by reason of the fact that only two sites were submitted to the electors by the board. (5) Unlawful and unauthorized acts of the board in passing a resolution on April 7, 1934, more than sixty days after the election. (6) Unlawful and unauthorized acts of the board in passing the resolution of August 9, 1935, more than sixty days after the election. This resolution was one to accept a new offer of the government of the United States based on rules and regulations not in force or effect or contemplated at the time of the election, and which rules were not known to the electors of the school district at the time the resolution purported to order the issuance of the bonds in the sum of $440,000. (7) The unauthorized acts of the board in proceeding to build the high school on the proposed site. (8) The unauthorized acts of the board in ordering the issuance of bonds in the sum of $440,000 by resolution passed more than sixty days after the election, without having again submitted the question to the electors.

All of the formal allegations of the petition were admitted by answer. The allegations relative to the illegal acts, fraud, misrepresentation and undue influence, were denied. In addition to the admissions and denials, respondents by their answer, and as a separate defense, pleaded *res judicata* and alleged that all of the matters now presented by relator were settled and determined by this court in the *Fisher Case,* supra.

It would appear that relator really presents but two questions: (1) Whether there was fraud and misrepresentation on the part of the respondents to void the election of February 3, 1934; and (2) whether or not the acts of the board in passing the resolution ordering the issuance of bonds in the sum of

$800,000, and the later resolution of August 9, 1935, ordering the issuance of bonds in the sum of $440,000, "were *ultra vires* the jurisdiction of respondents, and unlawful and void."

It will be noted that the former suit was in the name of the state of Montana on behalf of a taxpayer. The same condition exists here. The respondents also assert that all matters now before this court were presented, considered, and decided in the former action. Relator argues that this is not true.

The rule of law involved with relation to the doctrine of *res judicata* is well stated in the case of *Alfrey* v. *Colbert*, 44 Okl. 246, 144 Pac. 179, in the first paragraph of the syllabus, as follows: "In order to constitute a good plea of *res judicata*, the following elements should be apparent: First, the parties or their privies must be the same; second, the subject-matter of the action must be the same; third, the issues must be the same, and must relate to the same subject-matter; fourth, the capacities of the persons must be the same in reference to the subject-matter and to the issues between them—and where these elements are clearly apparent, the plea should be sustained." (See, also, *Ellison* v. *Hodges*, 71 Okl. 16, 174 Pac. 1089.)

In the case of *City of El Reno* v. *Cleveland-Trinidad Paving Co.*, 25 Okl. 648, 107 Pac. 163, 165, 27 L. R. A (n. s.) 650, the Oklahoma supreme court, in the course of holding that a judgment in a suit brought by one taxpayer attacking the validity of proceedings was *res judicata* in a subsequent suit brought by another taxpayer in the same district, said: "Treating the *Jones Case* then as a public proceeding to test the validity of the acts sought to be impeached, all questions that were or could have been litigated at that time by him or any other property owner of the same class affecting the validity of the proceedings of the city authorities or of the contract predicated thereon must of necessity be *res judicata*. If this were not the rule, Jones might have prosecuted his case to the supreme court, and the judgment of the district court against him be affirmed, and then his next door neighbor in the same paving district might bring a

similar suit, go through the same formula, and so on, until all the inhabitants in that district had their turn in court.''

The rule of *res judicata* is applied in such cases as this upon the theory that the remedy sought is in the interest of a class of individuals having common rights, and that any one of such individuals has the right to represent the class to which he belongs. (*Harmon* v. *Auditor of Public Accounts*, 123 Ill. 122, 13 N. E. 161, 5 Am. St. Rep. 502; *Benton* v. *Nason*, 26 Kan. 658; 34 C. J. 1029. Compare *In re Smith's Estate*, 60 Mont. 276, 199 Pac. 696.)

The subject-matter is certainly the same in both proceedings. A large number of the allegations made in the petition of Fisher are here asserted *verbatim*. The issues growing out of the subject-matter are necessarily the same. In the Fisher proceeding we had before us all of the records of the proceedings of the board up to the time of the submission of the case. We have the same record before us in this proceeding. With relation to the proceedings then before us, we specifically approved everything connected with the election, the selection of the site, the pending contract, and all matters affecting the purpose sought to be accomplished by the school district and the United States government. Under the settled rule of law, the judgment there rendered on the merits is binding between the same parties or their privies as to all matters there decided. (In addition to the authorities already cited, see, also, 34 C. J. 1018, and cases cited.)

We are frank to say that we are unable to see any new issues presented in this proceeding. Relator asserts that the fact that it is now sought to borrow and issue bonds for only $440,000 instead of $620,000, as originally contemplated, tendered a new issue. We do not agree with the contention. The record in the former case discloses the fact that the question propounded to the voters at the election held on February 3, 1934, was: ''Shall the board of trustees of School District No. 1 of Silver Bow county be authorized to borrow from the Government of the United States, or its agents, the sum of $800,000 or so much

thereof as is necessary?'' etc. That record disclosed the fact that it was not then or at any time the intention of the board to borrow the full sum of $800,000, but only the lesser sum of $620,000. It appears that the government originally contemplated an outright grant of $180,000 to aid in the erection of the building, but that later, and after the decision·in the *Fisher Case*, the offer on the part of the government was withdrawn, and subsequently a new offer was presented by the terms of which the government agreed to an outright grant of $360,000. Under the terms of the new offer, the district was only required to borrow and bond for the sum of $440,000. The new resolution by the board was directed to the acceptance of the later and more favorable offer.

The question of the time of the passage of the original resolution under consideration in the *Fisher Case* for the issuance of the bonds, and the question now raised concerning the time of passage of the resolution of August 9, 1935, ordering the issuance of the bonds under the present offer, are the same. We do not construe the requirement as mandatory in either instance. We think the proper rule is stated in 56 C. J. 615, as follows: ''In some jurisdictions, but not in others, a statutory provision that upon a prescribed vote the school board shall forthwith issue the bonds is mandatory. Where mandatory, a vote in the affirmative amounts to an instruction to the board, and its duties thereafter consist in obeying implicitly the directions of the voters so given, so that when the returns as certified are regular on their face and show that the proposed bond issue has been approved by the voters in accordance with the law, it is the duty of the appropriate officers to issue the bonds pursuant thereto; and a delay in the certification does not necessarily deprive the district of its right to have the bonds issued. The bonds voted need not be issued in the year in which voted, nor need they all be issued at. one time, since the right to issue the bonds is not necessarily defeated by a lapse of time, unless the purpose for which the bonds were voted has ceased to be necessary, or unless conditions have so changed that it

would be inequitable for the bonds to be issued. Bonds may be issued in a lesser amount than that authorized by the election, and at a lower rate of interest than such authorization.'' (See, also, *Fisherdick* v. *San Juan County Board of Education*, 30 N. M. 454, 236 Pac. 743; *City of Dayton* v. *Board of Education*, 201 Ky. 566, 257 S. W. 1021; *McAlexander* v. *Haviland Village School District*, 7 Ohio N. P. (n. s.) 590.)

We do not believe that the delay in this case, which was caused by litigation and negotiations with the government, in any manner affected the legality of the original authority voted by the district. Section 15 of Chapter 147, Laws of 1927, which provides that the board of trustees shall act within sixty days after the election authorizing issuance of the bonds, must at this stage of the proceedings be regarded as directory only, and not mandatory. (Compare *Shekelton* v. *Toole County*, 97 Mont. 213, 33 Pac. (2d) 531, and cases cited.)

To summarize: We are of the opinion that everything presented in the petition of relator in the present proceeding was considered and decided in the *Fisher Case*, and that it is *res judicata*, except possibly the two questions heretofore discussed, to-wit, the time of acceptance, and the amount of the bond issue. With relation to these two matters, we see no meritorious reason for holding that they adversely affect the legality of the proposed bond issue.

Again we say, as we did in the *Fisher Case*, that we have examined the record with respect to the matters under consideration, and that they are in substantial conformity with the laws of the state of Montana.

The application for the writ is denied and the proceeding dismissed.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.