AUGUST DESCHEEMAEKER, ALPHONSE CROSS, GEORGE EVERTZ AND CLARENCE AMUNDSEN, PLAINTIFFS IN INTERVENTION AND APPELLANTS, v. LUDWIG ANDERSON, ET AL., PLAINTIFFS AND DEFENDANTS IN INTERVENTION AND RESPONDENTS, AND CARBON COUNTY, MONTANA, ETC., ET AL., DEFENDANTS IN INTERVENTION AND APPELLANTS.

No. 9445.
Submitted February 27, 1957. Decided April 29, 1957.
310 Pac. (2d) 587.

Mr. J. H. McAlear and Mr. Robert F. Conwell, County Atty., Red Lodge, for appellants.

Mr. M. L. Parcells, Columbus, for respondents.

Mr. McAlear, Mr. Conwell and Mr. Parcells argued orally.

MR. JUSTICE CASTLES:

This is an appeal from a judgment quieting title in certain parcels of land in Carbon County in respondents, plaintiffs below. Appellants are Carbon County and individuals who were plaintiffs in intervention. The dispute is confined to a roadway extending from what is known as the Joliet-Columbus Road across part of the respondents' land to what is known as Joliet-Cole Creek Road. Appellants contend that a public road exists. Respondents contend that no public road exists; that the road is owned by them and traveled at sufferance by the public generally with the respondents' consent.

The respondents' land was homesteaded by one Richardson, (now deceased) who obtained a patent in the year 1919. Prior to the date of patent, Richardson and his wife mortgaged the land to a loan company. This mortgage was assigned to one Kinsella who, later in 1924, foreclosed the mortgage and obtained a sheriff's certificate of sale. In 1926, the premises were pur-

chased from Kinsella by the respondent, Ludwig Anderson, who deeded a portion of them to his wife, the respondent, Margit Anderson. The Andersons thereafter paid taxes and, other than the aforementioned claimed road along the southern boundary of the land, there is no dispute as to their fee title.

There is and was no public record of any road right-of-way over the disputed way. The appellant contended that: (1) the public obtained a right of travel by prescription, and (2) that there was a dedication of the roadway to the public by Richardson, that it was accepted, and that as laid out the dedication was binding on the successors in interest of Richardson, i. e., the respondents.

The appellants recite ten specifications of error going to the court's findings of fact and conclusions of law, all of which are encompassed in the above two contentions. We will discuss the evidence and the court's findings of fact as they apply to each of these contentions.

Although a considerable amount of space in the briefs is devoted to an analysis of the establishment of highways in Montana under statutory proceedings, as we view this case there is no application of the statutory proceedings since no record of any sort appears in the public records of Carbon County, either as to record titles or as to proceedings of the county commissioners.

If any public roadway can be found, it must be either by prescription or dedication. Rules of law applicable to the establishment of a public way by prescription in this case were discussed in Peasley v. Trosper, 103 Mont. 401, 405, 406, 64 Pac. (2d) 109, 110. In that case it was said:

"The primary question for solution in this case is, Was the evidence sufficient to warrant the trial court in finding that this particular road was a public road? Public highways are defined or enumerated by section 1612 [R.C.M. 1935, now R.C. M. 1947, section 32-103], as follows: 'All highways, roads, lanes, streets, alleys, courts, places, and bridges laid out or erected by the public, or now traveled or used by the public, or if laid out

or erected by others, dedicated or abandoned to the public, or made such by the partition of real property, are public highways'.

"In the case of Barnard Realty Co. v. City of Butte, 48 Mont. 102, 136 Pac. 1064, this court in construing the above statute said: 'We think, however, as we said in State v. Auchard, 22 Mont. 14, 55 Pac. 361, that the intention was to declare those only to be public highways which had been established by the public authorities, or were recognized by them and used generally by the public, or which had become such by prescription or adverse use, at the time the provision was enacted. Any other views would, in our opinion, render the legislation open to serious constitutional objection. Constitution, section 14, art. 3'.

"Although no cross-assignment of error is made on behalf of the plaintiff, it is intimated, if not argued, in his brief that the court was in error in not finding that a road had been established by prescription. The evidence, in addition to that set forth, disclosed that the county had never graded the road. Some relief workers in charge of a road supervisor of the county and using county-owned tools and appliances, at one time made some repairs on a bridge across an irrigation ditch on this road; the relief workers were not paid by the county. What we said in the case of Maynard v. Bara, 96 Mont. 302, 30 Pac. (2d) 93, 95, demonstrates conclusively that the trial court was correct in holding that no road was established by prescription or user; therein it was written: 'In order to establish a public highway by prescription, without color of title, by proof of travel over it for the statutory period, the testimony must definitely show a use of the identical strip of land over which the right is claimed. Pope v. Alexander, 36 Mont. 82, 92 Pac. 203, 565. This court in the case of Violet v. Martin, supra [62 Mont. 335, 205 Pac. 211], said: ''To arrive at a conclusion that a way over the lands of another is a public road, the evidence must be convincing that the public have pursued a definite, fixed course, continuously and uninterruptedly, and coupled it with an assump-

tion of control and right of use adversely under claim or color of right, and not merely by the owner's permission, over it for the statutory period (five years before the adoption of the 1895 Code and ten years since), without which prescriptive rights cannot attach.'' This statement was quoted with approval by this court in the case of Moulton v. Irish, supra [67 Mont. 504, 218 Pac. 1053]. A fixed and definite course does not permit of any deviation. Violet v. Martin; supra. The occupancy or use by the public of one portion of the road does not avail it in its claim to another portion not occupied by it. In any case the public may obtain title by adverse possession of that only which it has occupied during the full statutory period. Scott v. Jardine Gold M. & M. Co., 79 Mont. 485, 257 Pac. 406. * * * Before a road may be established by prescription over the lands of another, the evidence must be clear and convincing that the use of the road by the public was adverse and not merely permitted by the landowner. Violet v. Martin, supra. The fact that a passage of a road has been for years barred by gates or other obstructions to be opened and closed by the parties passing over the land, has always been considered as strong evidence in support of a mere license to the public to pass over the designated way. Quinn v. Anderson, 70 Cal. 454, 11 Pac. 746; Huffman v. Hall, 102 Cal. 26, 36 Pac. 417; De la Guerra v. Striedel, 159 Cal. 85, 112 Pac. 856. Our own decision in the Violet case, supra, with reference to the obstruction of a road by gates, is in accordance with the foregoing statement. Evidence of use by the public of a road obstructed by gates, standing alone, is insufficient to establish a highway by prescription'.''

In the instant case, the testimony as to whether the necessary requirements of prescription that a road was used openly, continuously, uninterruptedly, and along a definite course by the general public under a claim of right to use and travel the road was in part as follows: Prior to the year *1921*, some undefined travel was had across the lands in no definite or fixed course. In the year 1921, Mr. Richardson, the owner of the land, a Mr. Cooley, the Carbon County surveyor, and one

Winkler marked off a sixty foot roadway pursuant to an oral conversation. This alleged oral agreement granting permission to use the land was given providing a fence was built so as to exclude the roadway from the rest of the premises. Although there is conflict in the record as to whether or not the alleged roadway was enclosed at each end by a gate in the early years of the oral agreement, it is quite clear that since 1928 there were gates. Prior to 1928, the appellants' witness Winkler testified on direct examination, in part:

"Q. At the time you built the fence along the sixty foot right-of-way, did you put in gates on either end? A. No, sir, no gates.

"Q. When did you first see gates there? A. Well, there was gates there I think along there sometime about '28, but they were open when I went through with the maintainer, they wasn't shut."

Then on cross-examination, the same witness testified:

"Q. You never saw, during all of your time and experience, you never saw any gates on that road? A. There was gates there but they wasn't shut when I went through, they were always opened up when I went through.

"Q. The gates were there at all times though, when you went there? A. There was gate posts there, I imagine there was a gate there, I never paid any attention to it, because I never had no occasion to get out and look for it.

"Q. You weren't interested in gates? A. No, I wasn't."

Another of appellants' witnesses, Laughery, testified that there were gates on each side of respondents' land from 1917 on, except "after the county put that fence in and done some work on it; I know there were not gates for several years and then the fence went down and I suppose that they had to be put up to keep the stock where it belonged."

The aforementioned partial quotes of appellants' main witnesses on the early years of the alleged adverse public use is set out to show that even had the district judge accepted testimony of the appellants' witnesses exclusively, there would still be

sufficient evidence to find that the alleged use was not within the rules as stated in Peasley v. Trosper, supra. There was, in addition, testimony throughout the case to the effect that gates were across each end of the roadway, sometimes open and sometimes closed.

In addition, within the aforementioned rules of law, testimony was adduced that the claimed prescription right-of-way was as much as one hundred yards wide, and that frequently it varied from the sixty foot strip to go around coulees. Certainly this cannot be said to show a ''use of the identical strip of land over which the right is claimed.''

We do not feel it necessary to recite all of the various evidentiary matters, testified to. We approve the rules for establishment of a roadway by prescriptive use placing the burden on the public to show that use as being adverse, exclusive and uninterrupted for the statutory period as previously set out.

The appellants contend secondly that there was a dedication of the roadway to the public by Richardson, that it was accepted, and that as laid out the dedication was binding on the successors in interest of Richardson. In this connection the trial court found that the alleged road had never been dedicated as a public road by any person having full and exclusive title thereto, or by anyone who had authority to do so; that the statements made by Richardson in this regard amounted to no more than the giving of permission to use said roadway so long as gates were maintained. Appellants cite error as to these findings.

As previously related, in 1921, Richardson had his land mortgaged to a loan company. This mortgage was later foreclosed. made that the mortgagee even knew of the alleged dedication. made that the mortgagee even knew of the allleged dedication. Here the appellants contend that an oral dedication of a roadway was made by the mortgagor of the land even though without the knowledge or approval of the mortgagee.

Thus the question is presented whether or not a mortgagor of land can make a dedication of a roadway without the knowledge or approval of the mortgagee. The mortgage was recorded.

There was no public record of a dedication of roadway by plat or otherwise. In the foreclosure proceedings, the county was not joined as a defendant. The only evidence of a dedication was testimony of an oral conversation between the mortgagor, Richardson, and the then county surveyor. There was evidence presented of use by the public, a small amount of county expenditure on the roadway and a fence, but nothing else going to establishment of a road by dedication.

The general rule as to who may make a dedication is stated in 26 C.J.S. Dedication, section 6, page 404, as follows: ''any person capable of making a grant has capacity to dedicate, * * *'' Further in 26 C.J.S. Dedication, section 7, page 405, it is stated: ''Generally, no one except the owner of an unlimited estate or an estate in fee simple, or some one expressly authorized by him, can make a dedication of land, * * * The owner of an equitable estate may make a dedication which will be effective and, while a mortgagor may divest his rights in property dedicated, he cannot affect the rights of the mortgagee.''

It is apparent from an examination of the cases in other jurisdictions that certain fact situations arise which bring forth the application of estoppel and similar doctrines which prevent the application of the above-quoted general rules. In the instant case, there is no showing of any knowledge or any other matter concerning or about the mortgagee and his assignee which would call for the application of exceptions to the general rule.

Proof of the necessary facts to constitute a dedication must be clear, satisfactory and unequivocal. 16 Am. Jur., Dedication, section 83, page 422, note 15.

In Montana, the establishment of highways by dedication has been recognized. City of Helena v. Albertose, 8 Mont. 499, 507, 20 Pac. 817; State v. Auchard, 22 Mont. 14, 55 Pac. 361; Kaufman v. City of Butte, 48 Mont. 400, 138 Pac. 770; City of Billings v. Pierce Packing Co., 117 Mont. 255, 161 Pac. (2d) 636; Sherlock v. Greaves, 106 Mont. 206, 76 Pac. (2d) 87.

A reading of the Montana cases indicates that this court has

330

██ required the proof necessary to constitute a dedication to be clear, satisfactory and unequivocal.

In addition to a lack of clear, satisfactory and unequivocal ██ proof as to the capacity of the alleged dedicator of the roadway to dedicate, we believe the proof of the alleged dedication by testimony, from memory, as to an oral conversation back in 1921, followed by contradictory evidence as to whether or not the use was permissive only or adverse, fails to establish a common-law dedication, and that the trial court was not in error in finding that the alleged road had never been dedicated as a public road.

For the reasons herein stated, the judgment of the trial court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES BOTTOMLY and ANGSTMAN, concur.

MR. JUSTICE ADAIR:

I concur in the result but not in all that is said in the foregoing opinion.