MAUD H. BRANNON, Plaintiff and Appellant, v. LEWIS
AND CLARK COUNTY, a political subdivision of the
State of Montana, Defendant and Respondent.

No. 10555

Submitted September 9, 1963. Decided November 6, 1963.

Rehearing denied January 3, 1964.

387 P.2d 706.

Stanley R. Foot, Helena (argued), for appellant.

Thomas J. Hanrahan, Helena, William F. Crowley, Helena (argued), for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal by plaintiff-appellant Brannon from the summary judgment granted defendant-respondent Lewis and Clark County by the district court of the first judicial district on appellant's suit for damages resulting from alleged trespass and continuing trespass by respondent.

In summary form, the facts of this action are that in 1888 an Addition was laid out on the west end of the City of Helena. This addition was called the Syndicate Addition and has been duly mapped, platted, filed and accepted by respondent since December 20, 1888. A portion of this Addition was designated Leslie Avenue and dedicated as an east-west thoroughfare but, notwithstanding this dedication, respondent maintained a public highway which ran diagonally through the Syndicate Addition. It appears that this highway has been in continual operation for an indefinite period of time and is in existence today in a paved condition. There is no indication when the paving had been accomplished or how long the public has used this land as a highway.

Appellant filed a quiet title action to Lots 17 through 28, Block 186 of the Syndicate Addition on January 11, 1950. On June 16, 1950, appellant was granted a judgment quieting title to these premises. Respondent had been a party defendant to this quiet title action. Appellant has been continuously assessed and has paid taxes to respondent for full Lots 17 through 28 up to the present time although in fact, the highway occupies a portion of these lots.

At the quiet title action, apparently neither appellant nor respondent were aware of the fact that the highway passed diagonally through the lots in issue. The location of the highway was brought to light in 1960 when appellant sought to sell these lots and was advised that they had no value because of the location of the paved highway. Appellant commenced this action on November 15, 1961. On June 23, 1962, the trial court granted a summary judgment and ordered, adjudged and decreed that there was no genuine issue of fact, that ap-

pellant was not entitled to the relief prayed for, and that the respondent had obtained a prescriptive right to the land used as a highway as an easement of way. This appeal was taken from such summary judgment.

Appellant's first specification of error is: "The court erred in granting a summary judgment on the pleadings where there were questions of fact for the jury." Appellant's initial action was for damages resulting from alleged trespass and continuing trespass by respondent. Respondent raised the defense of easement by prescriptive right in his answer. It has long been established by us that section 67-1203, R.C.M.1947, which provides: "Occupancy for the period prescribed by Title 93 as sufficient to bar an action for the recovery of the property confers a title thereto, denominated a title by prescription, which is sufficient against all.", applies to easements. State v. Auchard, 22 Mont. 14, 16, 55 P. 361; Hays v. De Atley, 65 Mont. 558, 562, 212 P. 296. If respondent proved such prescriptive right, then he shows a title absolute in himself to the disputed land. This proof would be carried by respondent. Here the judge relied on section 93-2707-3(c), R.C.M.1947, which states: "* * * The judgment sought [summary judgment] shall be rendered forthwith if the pleadings * * * on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.", and entered a summary judgment for respondent. This specification of error properly raises the question of the sufficiency of the constituents of the pleadings.

██ It is a well-established rule in Montana that, barring other issues which have been raised and will be discussed later, the public can obtain a roadway by prescription. Peasley v. Trosper, 103 Mont. 401, 406, 64 P.2d 109; Descheemaeker v. Anderson, 131 Mont. 322, 324, 310 P.2d 587, 63 A.L.R.2d 1153. To establish a roadway by prescription it must be proven that the public "pursued a definite, fixed course, continuously and uninterruptedly, and coupled it with an assumption of control

and right of use adversely under claim or color of right, and not merely by the owner's permission, over it for the statutory period * * *." Violet v. Martin, 62 Mont. 335, 342, 205 P. 221; Descheemaeker v. Anderson, supra, 131 Mont. 325, 310 P.2d 589.

Scrutinizing the pleadings we find that it is admitted a quiet title judgment was rendered in favor of the appellant on June 16, 1950, concerning the property in issue and with respondent a party defendant; that respondent continuously used the land in issue as a public highway without appellant's consent and against her will after the quiet title judgment for a period of some eleven years; that respondent paved said highway; that appellant claims respondent did not have any right, title, interest, claim or estate to any or all of said premises after the quiet title judgment; and that respondent's entry upon said land was in violation of appellant's lawful rights. From a cursory inspection of the pleadings it would appear that the requisites for obtaining a roadway by prescription are admitted.

The terms "title by prescription" and "title by adverse possession" are two entirely different terms. The doctrine of prescription has reference to the acquisition of a nonpossessory interest in land (easement or profit), whereas the doctrine of adverse possession has reference to the acquisition of a possessory interest. Both doctrines are determined in a similar manner, see Burby on Real Property, West Publishing Co., 1943, p. 87, and thus, to adequately obtain the correct disposition of this appeal we shall incorporate cases deciding adverse possession issues.

We have stated previously that a statute will not commence to run against the owner of land until he is in a position to protect his title by appropriate action. Northern Pacific Ry. v. Smith, 62 Mont. 108, 118, 203 P. 503; Newton v. Weiler, 87 Mont. 164, 172, 286 P. 133. The quiet title proceeding was concluded on June 16, 1950. Appellant was in a legal position to

protect her title by appropriate action from that date forward, if she had not been able to do so previously. The statutory period for adverse possession was ten years on June 16, 1950, section 93-2507, R.C.M.1947, and subsequently has been changed to five years, as amended by Chapter 224, Laws of 1953. We need not be concerned with which statutory period would be applicable in this instance since the property was admittedly held adversely for a period of time longer than ten years.

Appellant states in her written brief that her first knowledge of this property being held adversely was in 1960 and implied in her oral argument that the fact of her being a resident of another state should be taken into consideration. In Le Vasseur v. Roullman, 93 Mont. 552, 557, 20 P.2d 250, we held:

"The possession of realty, to be adverse, must be actual and visible, exclusive, hostile, and continued during the time necessary to create a bar under the statute of limitations. [Cases cited.] The possession must be 'open and notorious, or such as to give the owner of the property either actual knowledge of the hostile claim, or of such a character as to raise a presumption of notice, or so patent that the owner could not be deceived.' [Case cited.] 'The claimant must exercise such acts of ownership and occupancy as are sufficient to "hoist his flag" over the lands, so that all may observe it.' [Authority cited.] 'The claim of the possessor must invade the title of the other [Case cited.], and be so brought home to him that he is in a position to institute action for possession at all times during the running of the statute of limitations [Cases cited.]' "

The contents of this quotation must be applied, at the minimum, to a prudent man. Were the circumstances of the adverse possession sufficient to put a prudent man upon inquiry? We feel that under the existing circumstances this question can only be answered in the affirmative. It is inconceivable to believe that a prudent purchaser would make a purchase of real property without knowing what it was he was buying. It would appear to us that a prudent purchaser would either inventory

his purchase himself or have an agent do it for him. We feel the highway that existed on appellant's land, whether or not it was paved, was sufficient in the instant case to bring to the attention of a prudent owner of land that his land was being held adversely and would satisfy the criteria established in the above quotation.

This court has continuously held that possession which is required to establish a prescriptive right must be actual, visible, exclusive, hostile and continuous for the full period. Ferguson v. Standley, 89 Mont. 489, 499, 300 P. 245; Le Vasseur v. Roullman, 93 Mont. 552, 557, 20 P.2d 250; Meyer v. Chessman, 132 Mont. 187, 193, 315 P.2d 512. These criteria are satisfied by the contents of the pleadings.

The only question that remains to be discussed is that of taxes. Adverse possession can in no case be considered as established unless the party asserting it has paid all the taxes levied and assessed the property during the statutory period. Anderson v. Mace, 99 Mont. 421, 428, 45 P.2d 771; section 93-2513, R.C.M.1947. Adverse possession and prescriptive rights differ on this criteria. "* * * owing to the nature of the use and occupancy of an easement and the fact that it does not divest the owner of title to the land over which it extends, not all the requirements of adverse possession of land apply to the acquisition of an easement by prescription. * * * The provision as to payment of taxes has no application to the acquisition of an easement, which is merely appurtenant to the dominant estate and is not taxable separate and apart from it. [Cases cited.]" Ferguson v. Standley, 89 Mont. 489, 500, 300 P. 245, 249. The fact appellant has paid taxes on all the lots is an indication tending to show that she did not intend, nor has she, abandoned title to her land.

Appellant cites a quotation taken out of context from a 1904 Kansas case, Shanline v. Wiltsie, 70 Kan. 177, 78 P. 436, 437, to support her contention that respondent did not acquire a title by prescription. This case appears in point but is dis-

tinguished in State v. Hayes, 125 Kan. 375, 263 P. 782, and Edwards v. Fleming, 83 Kan. 653, 112 P. 836. In the Edwards case, supra, 112 P. 839, it is pointed out that the Shanline case was founded on a mistake as to the true boundary line and that there is no intention on the part of the occupant to exercise, or on the part of the owner to suffer, any dominion beyond the true line, wherever it may be. In the Hayes case, supra, 263 P. 783, it was noted that a dedication, acceptance, prescription and limitation were invoked in the Shanline case. The instant pleadings do not admit a mistaken intent or an acceptance of the dedicated land by the respondent. It should also be noted that the Shanline case is of Kansas origin and not controlling in our decisions.

Appellant's second specification of error is: "The court erred in granting the summary judgment on the pleadings in a case [for the defendant and respondent] where the defense alleged was res judicata."

In In re Pomeroy, 51 Mont. 119, 121, 151 P. 333, 334, we quoted from 23 Cyc. 1300, and held: " 'The true test is identity of issues. If a particular point or question is in issue in the second action, and the judgment will depend upon its determination, a former judgment between the same parties will be final and conclusive in the second if that same point or question was in issue and adjudicated in the first suit, otherwise not.' " We cited this case with approval in Phoenix Mut. Life Ins. Co. v. Brainard, 82 Mont. 39, 44, 265 P. 10, 12, and went on to say: "Unless it clearly appears that the precise question involved in the second case was raised and determined in the former, the judgment is no bar to the second action." In State ex rel. Sullivan v. School Dist. No. 1, 100 Mont. 468, 472, 50 P.2d 252, we established four criteria that must exist before a plea of res judicata would be sustained. These criteria are: (1) the parties or their privies must be the same; (2) the subject-matter of the action must be the same; (3) the issues must be the same, and must relate to the same subject-matter;

208

and (4) the capacities of the persons must be the same in reference to the subject-matter and to the issues between them. In Kramer v. Deer Lodge Farms Co., 116 Mont. 152, 156, 151 P.2d 483, 484, while we stated the law of res judicata more explicitly by holding that a judgment is "binding and conclusive between all the parties to the suit and their privies and successors in interest, as to all matters adjudicated therein and as to all issues which could have been properly raised irrespective of whether the particular matter was in fact litigated," we did not narrow the law to include future causes of action.

 Applying the rule of law of res judicata to the instant situation, the 1950 quiet title decree would be a bar to any rights that respondent sought to raise that had occurred prior to 1950. This would include any prescriptive rights acquired to 1950. Respondent is not pleading a right acquired prior to 1950 however. The prescriptive right respondent asserts here was not in existence at the time of the quiet title decree in 1950; it arose thereafter. Appellant could have taken appropriate action after the 1950 quiet title decree, she did not. The right respondent now asserts is not barred by the law of res judicata.

 Appellant's final specification of error is: "The court erred in granting a summary judgment [for the defendant and respondent] on the pleadings [in a case] where the pleadings showed that defendant and respondent was not in court with clean hands." This specification of error is specious to a court of equity which considers that "Acquiescence in error takes away the right of objecting to it." R.C.M.1947, § 49-108; "No one can taken advantage of his own wrong." R.C.M.1947, § 49-109; and "The law helps the vigilant, before those who sleep on their rights." R.C.M.1947, § 49-119; and also that respondent did not come into court of his own volition, he was brought into court as a defendant. In oral argument respondent readily admitted that it had made a mistake, that the

left hand did not know what the right hand was doing. However, appellant also admits that she did not know what she had bought; she did not act as a prudent purchaser; she had slept on her rights for a period in excess of ten years; she in effect acquiesced respondent's wrong. Two wrongs do not make a right. This specification of error is without merit.

The judgment of the lower court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and JOHN CONWAY HARRISON concur.

MR. JUSTICE ADAIR dissenting:

I dissent.

Maud H. Brannon purchased and paid for Lots 17 through 28, Block 186 of the Syndicate Addition to the City of Helena, Montana, as same are described on the plat of said Addition on file in the County courthouse, and she paid Lewis and Clark County, the seller, in full for the Lots so described and purchased. Thereafter she brought suit in the district court of said County to quiet her title to such Lots as so described, and on June 16, 1950, said district court issued its judgment quieting her title to said premises and all thereof. The effect of the present decision is to nullify such judgment quieting her title. In my opinion, Lewis and Clark County is estopped from here asserting and claiming a right of way across Mrs. Brannon's property for which that County has paid nothing, but for which Mrs. Brannon has paid the County in full, including all taxes thereon from the date of her purchase to the present time.