No. 13810

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

LINDA L. LEHMAN,
formerly LINDA BILLMAN,

Plaintiff and Respondent,

-vs-

BARNEY R. BILLMAN,

Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable C. B. Sande, Judge presiding.

Counsel of Record:

For Appellant:

Calton and Stephens, Billings, Montana

For Respondent:

Anderson, Symmes, Gerbase, Cebull & Jones, Billings, Montana

---

Submitted on briefs: July 21, 1978

Decided: SEP 26 1978

Filed: SEP 26 1978

Thomas J. Kearney
                                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal is taken from an order issued by the District Court, Thirteenth Judicial District, Yellowstone County, whereby appellant's obligation to provide support moneys for his minor child and his visitation privileges were terminated. The cause was submitted on briefs to this Court; no oral argument was had.

On April 26, 1974, the parties Linda Lehman (formerly Billman) and Barney Billman were divorced. The District Court awarded custody of the couple's only child, Joseph Richard (Joey) to his mother, Linda, and ordered the father, Barney, to contribute $100 per month toward support of the child.

Barney petitioned the District Court on September 30, 1975, for modification of the divorce decree, asking that the amount of support money to be contributed to the child be reduced by 50 percent and that visitation rights be afforded him. A hearing on the matter was postponed, apparently because Barney failed to appear. On February 11, 1976, Barney renewed his petition for modification of the decree in respect of visitation, and again apparently failed to appear at the hearing on the motion.

Seven months after Linda sought a restraining order against him, Barney again petitioned on October 25, 1976, for modification of the divorce decree, seeking (1) a determination of the amount of child support in which he was in arrears, (2) an order to compel the child Joey enrolled in school under the surname "Billman", not Lehman, the name by which the child was known and had been enrolled, and (3) an order enjoining the mother from "poisoning" the child's mind against Barney.

-2-

After the November 4, 1976, hearing on Barney's petition for modification, of which a record was made, Judge C. B. Sande issued the first findings, conclusions and order modifying the decree, dated December 8, 1976, by which he did the following:

1. Set the amount which Barney was in arrears in his child support obligation;

2. Reduced the amount Barney was to contribute toward the support of Joey;

3. Set a specific time for visitation between Barney and Joey;

4. Ordered the child to be enrolled in school under and go by the surname "Billman", even though, as the court acknowledged, "The child is not recognized by school authorities under the defendant father's surname of Billman"; and

5. Enjoined the mother from poisoning the child's mind against Barney.

Two filings were made on December 13, 1976, one, a motion to amend the findings and order, advanced by the mother's counsel, and the other a stipulation regarding supervised visitation. Within days, on December 22, 1976, Barney petitioned the District Court, seeking, inter alia, custody of the child.

On January 3, 1977, Linda filed a cross-petition for modification of the decree to eliminate all of Barney's visitation privileges. The following month, Judge Sande issued new findings, conclusions and order modifying the decree, dated February 2, 1977.

During the time between the two orders, numerous in-chambers conferences and interviews were conducted. Parti-

cipants included the court, attorneys for both parties, the parties themselves, the paternal grandmother, court services personnel, and the child.

Certain of the record is scanty, some is entirely absent, except by reference, but it is clear that Barney had, and likely may yet have, what is euphemistically referred to as a "problem with drinking". During the course of his marriage to Linda, Barney would often drink and then engage in violent and abusive behavior, ranging from calling Linda's young daughter Jody, who lived with the couple during their marriage, nasty names, to throwing knickknacks and running over the children's toys, to striking and abusing Linda in the presence of the children. That behavior eventually prompted Linda to seek a divorce from Barney. In September, 1974, Linda was married to Stephen R. Lehman, who has developed and maintains a parent-child relationship with Joey. In contrast, during the four years since the divorce, Barney has had very little contact with Joey. It appears that although on occasion, to protect the child, Linda refused to let Barney see him, Barney, over extended periods of time, voluntarily neglected to contact the boy.

Based on the information garnered from the conferences and interviews and from the prior hearing, the court issued the second order, which included the following findings:

1. The defendant father has had a serious drinking problem and was a poor husband and father; he willfully failed to pay child support and voluntarily neglected visitation of his child;

2. Because of Barney's drinking and the child's atti-

tude toward the defendant, the mother at times prevented visitation;

3. Joey does not want contact with Barney, and visitation can be accomplished only by physically taking the child against his will;

4. Forced visitation would be harmful, both mentally and emotionally, to the child;

5. The defendant is unable to provide a suitable home for Joey, while Linda and her husband have provided an excellent home and parental care for him;

6. The child looks to Stephen R. Lehman as his father and a change in custody would be extremely harmful to the child;

7. What support the defendant does provide is not needed and is a source of continuing conflict between the parties; and

8. The parties so hate one another that continued contact between them would result in harm to the child.

After making those findings and considering the best interest of the child, the court concluded and ordered that Barney's support obligation be terminated and that he be denied further visitation with the child.

On March 24, 1977, notice of appeal was filed by Barney's attorney. After numerous delays on appellant's part over a ten-to-eleven month period, on January 20, 1978, this Court, of its own motion, ordered the appellant to show cause why the appeal should not be dismissed for failure to file a brief. A brief was subsequently filed on January 31, 1978.

Although counsel for respondent argues strongly and persuasively for this Court to dismiss the instant appeal

based on appellant's failure both to timely appeal and to pursue the appeal with some measure of diligence, we rest our decision on the statutory requirement that heed be paid the best interest of the child. Sections 48-332 and 48-337, R.C.M. 1947 (Supp. 1977). It happens that appellant's dilatoriness in pursuing his appeal is an additional factor which supports our conclusion that the best interest of the child is served by upholding the District Court's second order terminating both Barney's obligation to provide support moneys and his visitation privileges.

The District Court has discretion to modify an order granting or denying visitation rights whenever modification would serve the best interest of the child. Section 48-337(2), R.C.M. 1947 (Supp. 1977). By the express terms of the statute, the court is required to find that "visitation would endanger seriously the child's physical, mental, moral, or emotional health." The District Court specifically found that "visitation at this time can be accomplished only by physically taking the boy against his will and forcing the visitation" and that "enforced visitation would be mentally and emotionally harmful to the child."

Those findings were based on information provided the court during a series of in camera conferences and interviews, in which all interested persons participated at various times between the issuance of the two findings, conclusions and orders. Appellant charges that the District Court erred in failing to cause a record to be made of the in chambers interview(s) with the child. Appellant complains of the lack of such record, yet he, with and through his counsel, agreed to attempt to informally resolve the problem of visitation, and, to that end, agreed that off-

the-record conferences and interviews were to be held. That such agreement was made is not disputed by appellant; furthermore, direct reference to it is made in the statement prefatory to the District Court's findings, viz., "This matter having come before the Court on opposing motions of the parties, and the Court having heard the testimony taken in previous hearings in this matter and having met in chambers pursuant to agreement of counsel with the parties, their counsel, the paternal grandmother, the minor son of the parties, and the Court Services personnel, who has investigated and assisted in the matter, the Court makes the following FINDINGS OF FACT." (Emphasis added.)

In order to determine if the District Court did err in this regard, we must inquire whether counsel may waive the requirement imposed by section 48-334(1), R.C.M. 1947 (Supp. 1977), that a record be made of the court's interview(s) of the child. Examination of a most recent decision, Easton v. Easton (1978), ____ Mont. ____, ____, 574 P.2d 989, 992, 35 St.Rep. 123, 126, reveals that indeed counsel may so waive, and should he do so, he may not later complain that he was prejudiced thereby. In Easton, the District Court, pursuant to agreement of counsel, required no record be made of a particular hearing. Remarking that "* * * Counsel surely knows the term 'waiver' is generally defined as a voluntary and intentional relinquishment of a known right, claim or privilege", Easton v. Easton, ____ Mont. at ____, 574 P.2d at 992, 35 St.Rep. at 126, this Court took exception to the objection raised by defendant that no record was made of the hearing. We likewise take exception in the instant case. Appellant may not waive, voluntarily and intentionally, a known right--here, the right to have made a record of the

court's _in_ _camera_ interview(s) of the child--and later complain that the District Court erred in accomodating him. This specification of error is specious to a court of equity which considers. that one's acquiescence in error takes away the right of objecting to it. Section 49-108, R.C.M. 1947 (Supp. 1977); see Brannon v. Lewis & Clark County (1963), 143 Mont. 200, 208, 387 P.2d 706, 711.

The District Court exercised the option made available to it under section 48-334(1), R.C.M. 1947 (Supp. 1977), and interviewed the child in chambers "to ascertain [his] wishes as to his custodian and as to visitation." Apparently the court allowed counsel for appellant and perhaps appellant himself to be present at the interview(s), in conformity with the discretion granted the court by that same statute. The court determined that the best interest of the child would be served by terminating Barney's visitation rights. We defer to that judgment, because the District Court has a superior advantage in determining these difficult problems. See Weber v. Weber (1978), ____ Mont. ____, ____, 576 P.2d 1102, 1104, 35 St.Rep. 309, 311-12, and cases cited therein.

The Montana statutes are specific in their requirements, from setting forth how a custody or support proceeding shall be entitled, section 48-315(2), R.C.M. 1947 (Supp. 1977), to demanding that, in the absence of written consent of the parties, there be a showing of changed circumstances to support a petition for modification of a decree in respect of support, section 48-330(1)(a), R.C.M. 1947 (Supp. 1977), to mandating. that an affidavit setting forth _facts_ supporting the requested modification accompany papers seeking modification of a custody decree, section 48-340, R.C.M. 1947 (Supp. 1977). Counsel's failure to comply with these

statutory requisites, as in the instant case, is invitation to erroneous rulings and determinations prejudicial both to their clients' rights and to the system of justice of which they are guardians.

Our refusal to decide this case on procedural grounds is not to be mistaken as closing our eyes to the necessity of complying with statutory dictates. A remand in the instant case, however, would serve but to further delay resolution of this matter and thus work against the best interest of the minor child. Because it is the best interest of the child which is made the ground of our decision, we allow to stand the findings, conclusions and order more lately issued by the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices